694 So.2d 215 (1997)
DOW HYDROCARBONS & RESOURCES
v.
John Neely KENNEDY, Secretary, Department of Revenue and Taxation, and Richard P. Ieyoub, Attorney General of the State of Louisiana
No. 96-CA-2471.
Supreme Court of Louisiana.
May 20, 1997.
Robert G. Pugh, Pugh, Pugh & Pugh, Shreveport; Richard P. Ieyoub, Attorney General, Thomas S. Halligan, Baton Rouge, for Applicant.
Bruce James Oreck, Adams, Johnston & Oreck, New Orleans, for Respondent.
TRAYLOR, Justice.[*]
This case comes to this Court on direct appeal from the 19th Judicial District Court *216 of East Baton Rouge Parish pursuant to Louisiana Constitution Article V, Section 5(D) upon a declaration by that court that 1993 La. Acts No. 690 violates Article III, Section 2 of the Louisiana Constitution.

Issue
Article III, Section 2(A) of the Louisiana Constitution of 1974 provided:[1] "No measure levying a new tax or increasing an existing tax shall be introduced or enacted during a regular session held in an odd-numbered year."
The issue before us is whether 1993 La. Acts No. 690 (hereinafter "Act 690"), which reclassifies corporate dividend income from "allocable income" to "apportionable income" for taxing purposes, constitutes a new tax or an increase to an existing tax. Because Act 690's reclassification results in an increase in corporate income tax, and because Act 690 was enacted in 1993, we find that Act 690 increases an existing tax in an odd-numbered year in violation of Article III, Section 2(A) of the Louisiana Constitution. We therefore affirm the trial court's declaration of the unconstitutionality of Act 690.

Background
On June 21, 1993, in a regular session, the legislature passed Act 690 which amended certain provisions of Louisiana's corporate income tax law. The act, inter alia, reclassified certain dividend income, with the result being that a corporation not based in Louisiana but doing business in Louisiana (hereinafter "non-Louisiana corporation") would have to pay income tax on dividends received from a controlled subsidiary[2] that earned no income in Louisiana. Before the enactment of Act 690, such income was not subject to Louisiana income tax. The act also provided that a corporation based in Louisiana (hereinafter "Louisiana corporation") would not be subject to corporate income tax on dividends received from a controlled subsidiary that earned no income in Louisiana.
Following the enactment of Act 690, several corporate taxpayers, including Dow Hydrocarbons & Resources, Inc. ("Dow"), paid their corporate income taxes in accordance with Act 690 under protest and filed suit for refunds alleging that Act 690 violated Article III, Section 2(A) of the Louisiana Constitution and the Commerce Clause of the United States Constitution.
Resolving cross motions for summary judgment, the district court concluded that Act 690 violated Article III, Section 2(A) of the Louisiana Constitution. The court found that the reclassification of dividend income amounted to a new tax or an increase to an existing tax, stating in his Amended Written Reasons for Judgment, "it matters not whether one categorizes Act No. 690 as a new tax or an increase in an existing tax. Both are prohibited by the Louisiana Constitution if passed in an odd-numbered year."

Act 690
Under Louisiana corporate tax law, all corporate income is segregated into either "apportionable" or "allocable" income. La.R.S. 47:287.92. This classification determines the method of taxation for that income. Allocable income is allocated directly to the states where the income is earned or derived, while apportionable income is subject to taxation in Louisiana based on an apportionment percentage regardless where such income is derived. La.R.S. 47:287.93-94. Therefore, Louisiana only taxes allocable income which is earned in Louisiana, La.R.S. 47:287.93, whereas Louisiana taxes a percentage of all apportionable income without regard to its geographic source.[3] Apportionable income is the default category as it includes all items of gross income not specifically included in allocable income. La.R.S. 47:287.92(C).
Prior to Act 690, dividend income was classified as allocable. The former La.R.S. 47:287.92(B)(4), deleted by Act 690, listed "[d]ividends from corporate stock" as allocable *217 income. Additionally, the former subsection (4) of La.R.S. 47:287.93(A), also deleted by Act 690, provided that dividend income was to "be allocated to the state in which the securities or credits producing such income have their situs ..." Therefore, prior to Act 690 a corporation was not subject to tax on dividends received from a subsidiary provided that the subsidiary earned all of its income outside of Louisiana. Because the default category is apportionable income, Act 690's deletion of these subsections changed the classification of dividend income from allocable income to apportionable income. Consequently, the previously untaxed income received from such sources is now subject to Louisiana corporate income tax.
A discussion of Act 690 would not be complete without noting that while non-Louisiana corporations are required to pay taxes on dividends from controlled subsidiaries, Louisiana corporations are not. La.R.S. 47:287.94(I), added by Act 690, instructs Louisiana corporations to segregate dividend income from controlled subsidiaries and attribute that income to the states or foreign countries where the subsidiary earns its income. Thus, a Louisiana corporation is not taxed on dividend income received from a controlled non-Louisiana subsidiary which earns all of its income outside of Louisiana, whereas a non-Louisiana corporation is taxed on such income.[4]

Analysis
Article III, Section 2 of the Louisiana Constitution prohibits the enactment of any measure levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year.[5]
The legislature enacted Act 690 in June of 1993, an odd-numbered year, during a regular session with an effective date of the previous January 1, 1993. 1993 La. Acts No 690. The remaining question is whether Act 690 is prohibited as imposing a new tax or increasing an existing tax.
The initial determination as to whether Act 690 is a tax is not difficult. The stated purpose contained within Act 690 is "[t]o amend and reenact ... relative to the classification of income for the purposes of the corporation income tax." All of the deletions and additions effected by Act 690 occur within Part II-A., entitled "Louisiana Corporate Income Tax," of Title 47. Act 690 clearly deals with corporate income tax. Moneys collected by the state pursuant to the Louisiana Corporate Income Tax statutes are taxes. The moneys paid to Louisiana pursuant to the statutes modified by Act 690 are taxes.[6]
While a determination as to whether Act 690 is more appropriately characterized as a new tax versus an increase to an existing tax is somewhat difficult, that it is one of the two is easily discernable. Act 690 reclassifies dividend income from allocable to apportionable. Consequently, non-Louisiana corporations must pay income tax to Louisiana on dividend income received from a controlled subsidiary that earned the income elsewhere. Simply put, prior to Act 690, corporations did not pay this tax to Louisiana. Under Act 690, they must pay this tax to Louisiana. This is an increase to corporate income tax. Although paying taxes on income previously not taxed is arguably a new tax, it matters not whether Act 690 is characterized as a new tax or an increase to an existing tax as both are violative of Article III, Section 2.

*218 Decree
For the foregoing reasons, we find that Act 690 is a new tax enacted in an odd-numbered year in violation of Article III, Section 2(A) of the Louisiana Constitution.[7] We therefore affirm the trial court's declaration of the unconstitutionality of 1993 La. Acts No. 690.
AFFIRMED.
LEMMON and KIMBALL, JJ., concur and assign reasons.
LEMMON, Justice, concurring.
The challenged act is a taxing measure because its primary object, as indicated in the fiscal note attached to the act, was the raising of revenue. However, this is a technical, rather than a substantive, constitutional defect, and the Legislature in an even-numbered year or a special session may enact the same measure, which is of highly doubtful constitutionality under the federal constitution.
I further agree with Justice Kimball that this court's performance of its judicial responsibility to determine the severability of an unconstitutional portion of a statute is not a judicial "line-item" veto. This judicial function provides due deference to the integrity of legislative enactments and is the very nature of the judicial process.
KIMBALL, Justice, concurring.
I concur in the judgment that holds Act 690 violates Louisiana constitutional provisions barring the levy of a new tax or the increase of an existing tax in an odd-numbered year. I write separately to note that, in my view, the Act is per se invalid because it imposes a tax which discriminates against interstate commerce in disregard of well-established Commerce Clause principles.
The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have the Power ... [t]o regulate Commerce ... among the several States...." U.S. CONST. art. I, § 8, cl. 3. This provision "has long been seen as a limitation on state regulatory powers, as well as an affirmative grant of congressional authorization." Fulton Corp. v. Faulkner, ___ U.S. ___, ___, 116 S.Ct. 848, 853, 133 L.Ed.2d 796 (1996). "The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce." Maryland v. Louisiana, 451 U.S. 725, 759, 101 S.Ct. 2114, 2135, 68 L.Ed.2d 576 (1981). "No one disputes that a State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry." Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 271, 104 S.Ct. 3049, 3055, 82 L.Ed.2d 200 (1984). However, the Commerce Clause's dormant or negative aspect limits the means by which states can achieve their goals, id., and proscribes protectionist schemes or measures otherwise designed to benefit in-state economic interests by burdening out-of-state competitors. Associated Industries of Mo. v. Lohman, 511 U.S. 641, 645, 114 S.Ct. 1815, 1820, 128 L.Ed.2d 639 (1994).
A state tax is not per se invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its own way. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A corollary to this rule, however, is that "[s]tate laws discriminating against interstate commerce on their face are `virtually per se invalid.'" Faulkner, ___ U.S. at ___, 116 S.Ct. at 854 (emphasis added). The State's right to tax interstate commerce is limited in the sense that no tax may be sustained unless the tax:

*219 (1) has a substantial nexus with the State;
(2) is fairly apportioned; (3) does not discriminate against interstate commerce; (4) is fairly related to the services provided by the State.
Maryland v. Louisiana, 451 U.S. at 754, 101 S.Ct. at 2133. This antidiscrimination principle "follows inexorably from the basic purpose of the Clause" to prohibit destructive preferential trade or tax schemes that impede the free commerce anticipated by the federal constitution. See id.
Simply put, the statutes enacted by Act 690 tax dividends received by foreign corporations, but not dividends received by similarly situated Louisiana corporations from a controlled subsidiary that earned no income in Louisiana. In design, these statutes discriminate against interstate commerce, and as such are "virtually per se invalid." Faulkner, ___ U.S. at ___, 116 S.Ct. at 854. Additionally, I believe the Act cannot survive a dormant Commerce Clause analysis because the state did not carry its burden of proving the Act should be saved under basic Commerce Clause principles, such as those factors enunciated in Maryland v. Louisiana, supra. While I agree the legislature was without power to enact these statutes in an odd-numbered year, I believe the majority's work leaves the false view that this legislation may be passed in an even-numbered year. After reviewing these basic Commerce Clause principles, I believe such action would be a futile effort.
In addition, I believe the majority failed to conduct an essential exercise of judicial review in the context of a constitutionality question by not conducting a severability analysis of the Act. In whimsically casting aside the State's suggestion that offensive portions of the Act be severed from the remainder as a request for a "judicial `line-item veto'", the majority errs by disregarding important principles of constitutional analysis, especially considering our civilian system that strives to respect legislative will and works to save legislative enactments from constitutional attack unless they possess specific constitutional infirmities.
In interpreting the constitutionality of a statute, there is a general presumption of constitutionality. Brown v. State, Department of Public Safety & Corrections, 96-2204 p. 2 (La. 10/15/96); 680 So.2d 1179, 1180. In view of this presumption, judicial self-restraint is appropriate when statutes are under constitutional attack. Sherman v. Cabildo Construction Co., 490 So.2d 1386, 1390 (La.1986). Therefore, the unconstitutionality of one portion of a law does not render the entire law unenforceable if the remaining portion is severable from the offending portion. Police Association of New Orleans v. City of New Orleans, 94-1078 p. 19 (La. 1/17/95); 649 So.2d 951, 965. Moreover, and consistent with the civilian tradition of respect for legislative will, the test for severability is whether the unconstitutional portions of the law are so interrelated and connected with the constitutional portions that they cannot be separated without destroying the intention of the legislative body enacting the law. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895 (La.1993). Thus, it is completely within our authority and indeed our duty to "salvage the remainder", see ante at 218 n. 7, of any act from the offensive portion if possible. This is not evidence of a "judicial line-item veto," in fact, it is judicial restraint and our responsibility.
For these reasons, I respectfully concur.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Article III, Section 2 was amended effective November 18, 1993; however, Act 690 was enacted prior to that date.
[2] Controlled by direct ownership of fifty percent or more of the voting stock. La.R.S. 47:287.94(I).
[3] Louisiana taxes apportionable income based on the Louisiana Apportionment Percentage calculated according to the provisions of La.R.S. 47:287.95. La.R.S. 47:287.94.
[4] Based upon this apparent discrimination between in-state and out-of-state corporations Dow contends that Act 690 also violates the federal constitution. Because we find that Act 690 violates the Louisiana Constitution, we do not reach the question as to whether Act 690 also violates the Commerce Clause of the United States Constitution.
[5] Article III, Section 2 has since been amended to also prohibit "legislating with regard to tax exemptions, exclusions, deductions or credits" during an odd-numbered year. The amendment, effective November 18, 1993, does not affect our analysis.
[6] Where the collected moneys at issue are clearly taxes, there is no need to digress into an analysis of legislative intent. See La.Civ.Code art. 9. Where the collections could reasonably be a fee or some other non-taxing collection pursuant to the state's police power, the legislative intent to raise revenue could be controlling. Audubon Insurance Co. v. Bernard, 434 So.2d 1072 (La. 1983). There are no such assertions here.
[7] The state has suggested that we, the Court, upon a finding of unconstitutionality, should simply sever the offensive portion of the act and leave the remainder intact. We will only do so where the objective of the act can still be achieved without the offensive portion. Louisiana Associated Gen. Contractors v. State, 669 So.2d 1185, 1201 (La.1996). Such a severance requires a determination that the legislature would have passed the act in the absence of the invalid portion. Id. Where, as here, the purpose of the statute is defeated by the unconstitutional portion, the entire act is void. Id. It is not within the authority of the judiciary to rewrite the legislation in order to salvage the remainder. Nor do we find any authority for a judicial "line-item veto." The entire act is void ab initio.