# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-30436

G. SCOTT LOVE, PAUL S. BERGERON,
KATHLEEN B. BALHOFF, AND BENNIE
BAKER BOURGEOIS,

                                        Plaintiffs-Appellants,

versus

MIKE FOSTER, State of Louisiana, Govenor;
FOX MCKEITHEN, State of Louisiana, Secretary,

                                        Defendants-Appellees.

Appeals from the United States District Court
for the Middle District of Louisiana

July 16, 1998

Before POLITZ, Chief Judge, WISDOM and JONES, Circuit Judges.

POLITZ, Chief Judge:

On remand from the Supreme Court and this court the trial judge, in light of

a failure by the Louisiana Legislature to correct a constitutional defect in the state's

election code, set the dates for Louisiana's future congressional elections. The

plaintiffs appeal this order, contending that by striking down the provision for an

October election for congressional office the Supreme Court vitiated the entire

election code. They further contend that by operation of Louisiana law, the

election system replaced by the present code automatically is revived. For the

reasons assigned we reject these contentions and affirm the action of the district court.

Background

In 1995 the four plaintiffs, Louisiana voters, sought declaratory and injunctive relief, alleging that the state's election provisions violated federal statutes which require a uniform, nationwide election day for members of Congress. The district court granted summary judgment to the defendants and plaintiffs appealed to this court. We reversed, holding that the plaintiffs were "entitled to a declaratory judgment that Louisiana's election scheme conflicts with 2 U.S.C. §§ 1, 7 to the extent that the Louisiana scheme authorizes a contested election for members of Congress to be decided in the open primary before the uniform federal election day."[1] The Supreme Court granted certiorari and in due course affirmed, holding that "[w]hen Louisiana's statute is applied to select from among congressional candidates in October, it conflicts with federal law and to that extent is void."[2]

In our decision, affirmed by the Supreme Court, we remanded with directions that the plaintiffs' request for injunctive relief be reconsidered if the Louisiana Legislature failed to act timely to resolve the conflict occasioned by the October primary. The Legislature declined to act in a special session called by the Governor and the district court did as directed and ordered elections consistent with

---

[1] **Love v. Foster**, 90 F.3d 1026, 1031 (5th Cir. 1996), **aff'd Foster v. Love**, ___ U.S. ___, 118 S.Ct. 464, 139 L.Ed.2d 369 (1997).

[2] **Id.**, 118 S.Ct. at 468, 139 L.Ed.2d at 376.

the provisions of the Louisiana election code, federal statutes, and the holdings of this court and the Supreme Court. The trial court ordered that the upcoming congressional election and, absent intervening action by the Legislature, future elections for members of Congress shall be held on federal election day, the first Tuesday following the first Monday in November. In this year that date is November 3, 1998. In the event no candidate receives a majority of the votes cast, the court ordered a runoff election on the next available election date contained in Louisiana law, R.S. 18:512(C), the third Saturday after federal election day which, this year, is December 5, 1998. Otherwise, the elections are to be conducted in full accordance with the Louisiana election code as currently written.

Plaintiffs appeal, contending that the district court erred when it failed to order reinstated the closed primary election system in effect prior to the open primary system instituted by Act 1 of the 1975 Regular Session, and Act 697 of the 1976 Regular Session. It is the position of plaintiffs-appellants that the decisions by this court and by our Supreme Court mandated the trial court's abolition of Louisiana's open primary system and the reinstatement of the previously extant closed primary scheme.

Analysis

Neither our earlier opinion nor that of the Supreme Court leaves any room for doubt or uncertainty. It is manifest that Louisiana's practice of holding, and in most instances deciding, congressional elections prior to the federally established uniform election day is in direct conflict with federal law. But it was only the

3

timing of the first primary election that was found to be legally repugnant. There has been no relevant finding that the remainder of Louisiana's election code is in conflict with the Constitution or with any federal statute. In our earlier rejection of the invitation to declare the current election system invalid, and to replace it with the previous scheme, we stated that such a "drastic remedy would require us to radically overhaul the state's election procedure and reinstate an election system which the state abolished eighteen years ago."[3] We were not then prepared to take that Gargantuan step, nor, apparently, was the Supreme Court. We are not now prepared to do so unless mandated by dispositive law.

The critical question at bar is whether the invalidity of the provision for the October primary election dooms the entirety of the Louisiana election code. Stated more precisely, is that section severable from the legislation? Severability is a matter of state law,[4] to which we now turn.

Under Louisiana law, when a portion of a statute is found to be invalid, a severability analysis is an essential element of judicial review.[5] Louisiana Revised Statute 24:175, which contains the state's general rule on severability, provides:

> Unless otherwise specifically provided therein, the provisions of each act of the legislature are severable, whether or not a provision to that effect is included in the act. If any provision or item of an act, or an application thereof, is held invalid, such invalidity shall not affect other provisions, items, or applications of the act which can be given

---

[3]**Love**, 90 F.3d at 1031.

[4]**Leavitt v. Jane L.**, 518 U.S. 137 (1996).

[5]**Dow Hydrocarbons & Resources v. Kennedy**, 694 So.2d 215 (La. 1997)(Kimball, J. concurring).

effect without the invalid provision, item, or application.

As the election code contains no bar to severability, the court is required to determine whether the remaining parts of the legislation can be given effect without the invalid provision. The Louisiana Supreme Court has determined that "[t]he test for severability is whether the unconstitutional portions of the law are so interrelated and connected with the constitutional portions that they cannot be separated without destroying the intention of the legislative body enacting the law."[6] Stated simply, the first question is whether the legislature would have passed the statute without the invalid features.[7]

In 1976 the Louisiana Legislature completely rewrote the state's election code. The revision abolished the state's dual primary system in favor of an open primary system where all qualified candidates, regardless of party affiliation, appear on the same ballot, and all voters, with like disregard of party, are entitled to vote. The election code provided that this initial balloting take place on the first Saturday in October[8] with a runoff, if required, on federal election day. It appears certain beyond peradventure that the Legislature would have enacted the new open primary system with or without the constitutionally impermissible October election

---

[6]**Police Ass'n of New Orleans v. City of New Orleans**, 649 So.2d 951, 965 (La. 1995). **See also Polk v. Edwards**, 626 So.2d 1128, 1148 (La. 1993); **Cox Cable of New Orleans, Inc. v. City of New Orleans**, 624 So.2d 890, 895 (La. 1993); **Radiofone, Inc. v. City of New Orleans**, 616 So.2d 1243, 1249 (La. 1993); **State v. Azar**, 539 So.2d 1222, 1226 (La. 1989).

[7]**State v. Johnson**, 343 So.2d 705 (La. 1977).

[8]When the statute was enacted in 1976, it provided that congressional primaries were to be held on the third Saturday in September. This section was amended by Act 10 of the 1982 Regular Session of the Legislature to provide for the current October date.

date.  The obvious principal concern of the Legislature was the enactment of an open primary election system.

Finding it abundantly clear that the Legislature would have adopted the statute without the invalid provision, our inquiry must now focus on the critical question whether the remainder of the statute is capable of enforcement without that provision.  "It is not within the authority of the judiciary to rewrite the legislation in order to salvage the remainder."[9]  Rather, for the legislation to survive the valid portions of the election code must form a complete act within itself.[10]

Article I, Section 4, Clause 1 of the United States Constitution provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations . . . .

This clause establishes the power of each state to regulate elections, limited by the power of the Congress to make modifications.   In exercising this authority, the Louisiana Legislature enacted an election code which, *inter alia*, sets three dates for congressional elections: (1) a primary election to be held on the first Saturday in October,[11] (2) a runoff election to be held on federal election day,[12] and (3) in the

---

[9]**Dow Hydrocarbons & Resources v. Kennedy**, 694 So.2d 215, 218 n.7 (La. 1997).

[10]**Perschall v. State**, 697 So.2d 240 (La. 1997).  **See also State v. Johnson**, 343 So.2d 705 (La. 1977).

[11]La. R.S. 18:402 B(1).

[12]La. R.S. 18:402 B(2).

event of a tie, a third election to be held on the third Saturday thereafter.[13]  In absence of action by Congress, these dates are consistent with the constitutional provision authorizing the states to regulate the time, place, and manner of holding elections.

It is beyond dispute that Congress has acted in this area, however, and has required a uniform day for the election of all congressional candidates.  It has established a federal election day on the "Tuesday next after the 1st Monday in November, in every even numbered year . . . ."[14]  Louisiana's practice of allowing what turned out frequently to be decisive congressional elections prior to federal election day thwarted the congressional intent to establish this uniform day, providing the basis for invalidating this section of the Louisiana election system. The question which remains is whether the Louisiana election schema, without the October first primary, may stand on its own.

We harbor no doubt that this question may be answered in the affirmative. The Louisiana election code systemically is complete.  It provides for an open primary for election of state and federal office holders.  It establishes detailed procedures for implementing elections and regulating the voting process.  It provides an encompassing body of law governing the conduct of local, state, and federal elections.

Examining the Louisiana election code without the October, formerly

---

[13]La. R.S. 18:512 (c).

[14]2 U.S.C. § 7.  See also 2 U.S.C. § 1.

7

September, first primary date, we find an adequate and sufficient election day series to accomplish the true purpose of the election code – the proper and appropriate election of the candidates favored by the majority of the voting electorate. There remains a date for the initial elections which coincides with the November federal date. There is another election day prescribed in the event that no candidate receives a majority of the votes cast in the November election. True enough, the present statutory reference is to a "tie vote," but the commanding concept is clear; the election code provides in R.S. 18:512(C) for an election after the November election in the event the November balloting fails to result in a candidate polling the majority of the votes cast. Thus the election code, with the October election removed, provides dates for both a primary and a runoff election.

We find neither error nor abuse of discretion by the district court in its resolution of the issues presented by the rulings of this court, affirmed by the Supreme Court, and the explicit and implicit charges to fashion a remedy consistent with these rulings which preserves the Louisiana election code, and the election scheme adopted by the Louisiana Legislature. Absent action by Congress, any further changes that might be made therein are the exclusive province of the Louisiana Legislature and Governor, as are any refinements or valid significant changes they may wish to make as a consequence of today's resolution.

In sum, therefore, we entertain no doubt that the Louisiana authorities would have adopted their election code without the October (previously September) first primary date, that the invalidated October first primary is severable, and that the

8

election statutes, after the severing of the October primary election, remain complete, sufficient, enforceable, and stand on their own.

It cannot be gainsaid that the careful method of the district court in resolving this conundrum was approached with total allegiance to the concepts of comity, federalism, and judicial restraint. Accordingly, the judgment appealed is AFFIRMED.

EDITH H. JONES, Circuit Judge, concurring in part and dissenting in part:

The Chief Judge's opinion persuasively analyzes the critical question in this case, severability under Louisiana law. Finding that Louisiana's open primary law, taken together with the governing federal law setting an initial election date, is sufficiently severable from the invalid election dates, the opinion affirms Judge Polozola's order. I do not disagree with the panel opinion in this respect. I write separately, however, to indicate that the district judge did not, in my view, have the authority to enjoin Louisiana to conduct its open primary elections indefinitely according to the dates set forth in his injunction. The district court's order should be viewed as a stop-gap measure, made necessary by the rapid onset of this fall's election campaigns, but it does not remove the imperative for the Louisiana legislature to enact its own election dates.

The parties should not be misled into thinking that Judge Polozola's order is a permanent substitute for proper legislative action. The train of events that led to this order may well have given them that impression, however. When the plaintiffs initially prevailed in this court, they sought an injunction restoring the Louisiana closed-primary system as it had existed before 1978. This court denied their request, describing such relief as a radical overhaul of the state's election machinery, and remanded to the district court with instructions to defer to the legislature. The Supreme Court's opinion does not reach the extent of affirmative relief to which the plaintiffs may be entitled. After remand to the district court, the Louisiana legislature failed to enact an alternate, constitutional set of election dates

10

for the open primary system. When the district court held its final remedial hearing before entering the order now on appeal, the plaintiffs again urged, citing Louisiana law, that the statutory timing of Louisiana's open primary was non-severable from the rest of the scheme and that Louisiana must return to the pre-existing closed-primary system.

The district court may have known, as this court was informed only during oral argument, that Louisiana's election system could not be wound back to its pre-1978 status. Plaintiffs conceded in our court that the state election law has changed so much as to make recourse to such a remedy utterly impracticable. Plaintiffs admitted, in essence, that their request for injunctive relief was founded on an impossibility. Faced with the prospect of impending elections, but with no help from the plaintiffs or the legislature, what was the district court to do? He chose the sensible course of employing the federal November election date and adapting Louisiana's December fall-back date for any runoffs following the open primary.

Rational though it appears, the district court's temporary remedy, fashioned to accommodate the fall 1998 election, is not an ultimate solution to this litigation. This is not an area in which federal courts are even permitted, much less required or competent to fashion a remedy. First, federal courts do not have the authority to rewrite statutes to render them constitutional. Universal Amusement Co., Inc. v. Vance, 587 F.2d 159, 172 (5th Cir. 1978) (en banc), aff'd. 445 U.S. 308, 100 S. Ct. 1156 (1980). In this case, only because of necessity as described

11

above, the statute has been judicially rewritten: the date of the open primary has been moved from October to the first Tuesday in November, and any possible runoff date has been set to occur in December. Second, the finding that Louisiana's election dates were in conflict with federal law engendered no obligation of the court to grant affirmative injunctive relief -- other than to prevent operation of the offending provision. Unlike a civil rights or voting rights case, in which federal courts issue injunctions to protect the rights that have been abridged, this case deals only with preemption. It is Louisiana's business to amend the statute that ran afoul of governing federal law. Finally, federal courts must always be reluctant to tamper with state election mechanisms. White v. Weiser, 412 U.S. 783, 795, 93 S. Ct. 2348, 2355 (1973); Love v. Foster, 90 F.3d 1026, 1030 (5th Cir. 1996). The Louisiana legislature's inability to amend its law to adopt the district court's simple solution strongly suggests that more is at play politically than the choice of election dates. Even if, as here, a temporary judicial intervention has become necessary, the state government must re-assume its legislative responsibilities at the earliest possible moment.

For these reasons, the district court's remedy is good for this election only, but Louisiana must pass legislation to conform its election law to federal requirements for any election following those of 1998.