701 So.2d 1300 (1997)
Raymond PALMER, et al.
v.
LOUISIANA FORESTRY COMMISSION and Louisiana Tax Commission.
No. 97-C-0244.
Supreme Court of Louisiana.
October 21, 1997.
Rehearing Denied November 21, 1997.
*1301 C. James Gelpi, David S. McFadden, New Orleans, Marion A. French, Alexandria, Vyrona M. Wiltz, Krotz Springs, David R. Cassidy, Jonas M. Robinson, Breazeale, Sachse & Wilson, Baton Rouge, for Applicant.
William J. Doran, Jr., Toni M. Higginbotham, David H. Cliburn, Baton Rouge, for Respondent.
James M. Bullers, Benton, S. Andrew Shealy, Ruston, for Bossier Par. Police Jury, Webster Par. Police Jury, Amicus Curiae.
Iley H. Evans, Columbia, S. Andrew Shealy, Ruston, for Caldwell Par. Police Jury, Amicus Curiae.
Charles F. Wagner, Alexandria, S. Andrew Shealy, Ruston, for Rapides Par. Police Jury, Amicus Curiae.
Terry R. Reeves, Winnfield, S. Andrew Shealy, Ruston, for Winn Par. Police Jury, Amicus Curiae.
Robert W. Levy, S. Andrew Shealy, Ruston, for Lincoln Par. Police Jury and Union Par. Police Jury, Amicus Curiae.
Walter E. May, Jr., S. Andrew Shealy, Ruston, for Bienville Par. Police Jury, Claiborne Par. Police Jury, and Jackson Par. Police Jury, Amicus Curiae.
William E. Tilley, Leesville, S. Andrew Shealy, Ruston, for Vernon Par. Police Jury, Amicus Curiae.
KNOLL, Justice.
This case arose from a complaint by plaintiff Raymond Palmer, and police juries from the parishes of Grant, Ouachita, Sabine, Vernon, and the Police Jury Association of Louisiana that the reclassification of a forest product termed "chip and saw" resulted in an illegal loss of revenues to the plaintiff parishes. By law, the defendants, the Louisiana Forestry Commission and the Louisiana Tax Commission are required to meet annually to determine the market values of certain natural resources so that a severance tax may be imposed: 2¼% on the current average stumpage market value of those products deemed "trees and timber," and 5% on those products deemed "pulpwood." To that end, in past years, the Louisiana Forestry Commission and the Louisiana Tax Commission [hereinafter the Commissions] set values at the "trees and timber" rate for pine saw timber and hardwood saw timber, and set values at the "pulpwood" rate for pine pulpwood and hardwood. Formerly, a forest product known as "chip and saw" had been included as part of pine pulpwood.
During the statutory meeting held on December 13, 1993, the Commissions concluded that chip and saw no longer fit within the "pulpwood" category. Instead, the Commissions concluded that factually, chip and saw belonged in the "trees and timber" category. Therefore, the Commissions removed *1302 chip and saw from the pine pulpwood subgroup and established chip and saw as a new subgroup in the "trees and timber" category. The switch meant that severed chip and saw generated less tax revenue. By law, the parishes receive three-quarters of the revenue collected as severance tax.
In its reasons for judgment dated April 21, 1995, the trial court concluded, and the court of appeal affirmed, Palmer v. Louisiana Forestry Commission, 96-0008 (La.App. 1 Cir. 9/27/96), 683 So.2d 739, that by their action the Commissions had exceeded their statutory authority and had violated the constitutional prohibition against the levy of a new tax without legislative approval. We granted writs to examine the soundness of that ruling. For reasons herein explained, we conclude that the Commissions' actions neither exceeded statutory authority nor constituted the levy of a new tax.

INTRODUCTION
The Louisiana Constitution authorizes the legislature to impose a severance tax on natural resources "predicated upon either the quantity or value of the products." La. Const. art. 7, § 4(B). The manifestation of that grant takes shape in La.R.S. 47:631 et seq. As originally set forth in 1950, La.R.S. 47:633 imposed a severance tax on six categories of timber, whose rates were based on the quantity of resources severed.[1] The rates based on quantity changed in 1975 when, by Act No. 460, the legislature repealed La.R.S. 47:633 paragraphs (3)(6), and amended paragraphs (1) and (2) to provide for the imposition of tax based not on quantity but on value at the following rates: "(1) On trees and timber, except pulpwood, two and onequarter percent of the then current average stumpage market value of such timber, ... (2) On pulpwood, five percent of the then current average stumpage market value of such pulpwood." La.R.S. 47:633(1) & (2).
In 1991, the legislature again amended La. R.S. 47:633 to explain how the Commissions were to determine market values for severance tax purposes. The amended statute provides:
(3) The Louisiana Forestry Commission and the Louisiana Tax Commission shall base their determination of the market value of trees, timber, and pulpwood as provided in Paragraphs (1) and (2) of this Section exclusively on sales of timber as reported to the Louisiana Department of Revenue and Taxation and as published in the "Quarterly Report of Forest Products" by the Louisiana Department of Agriculture and Forestry.
La.R.S. 47:633(3).

FACTS
In the logging industry, the price of felled timber is determined before it is cut. During a "timber cruise," the market stumpage value is determined by evaluating the standing timber according to species, volume, and grade or quality. Based on those findings, a price is agreed upon between the buyer and the seller. Willamette Industries, Inc. v. C.I.R., 54 T.C.M.(CCH) 616 (1987). The anticipated end use of the trees thus forms the basis of the transaction, according to the plaintiffs' expert economist, Sun Chang.
Formerly, lumber could be formed only from trees with large base diameters. Therefore, those trees in the felling tract with diameters of less than eight or ten inches were too small to be sawed into lumber. In the late 1960s, the introduction of the chipping rig enabled a new manufacturing process called "chip and saw" to utilize trees with the smaller diameters for making lumber, according to Louisiana Forestry Commission chairman Paul Frey. The process involved milling or "chipping" the chip and saw trees into a configuration that would allow part of the tree to be sawed into lumber instead of using the entire smaller diameter trees as a paper, or pulpwood, product. Over the last fifteen years, technological improvements, *1303 including the chipping rig, resulted in higher and higher yields of lumber in Louisiana, according to Louisiana Forestry Commissioner Stanley Carpenter. Commissioner Frey, who visited mills throughout the state, determined that current technology permitted a yield of fifty-four to sixty percent lumber from chip and saw trees.
By 1993, improvements in chip and saw technology caused prices for trees designated as "chip and saw" to increase far beyond prices for trees designated as "pulpwood." In fact, average prices published in the third quarter of the Quarterly Report of Forest Products, whose calculations were mandated by La.R.S. 47:633.6(B) to be based on sound statistical methods, indicated that chip and saw's value was 69% that of pine saw timber and 210% that of pine pulpwood.[2] Therefore, chip and saw's predominant use as a lumber product was reflected in its market price.
The Commissions responded to the technological and marketplace realities concerning chip and saw. At their annual statutory meeting on December 13, 1993, the Commissions voted to remove chip and saw from the "pulpwood" category and place it as a separate subgroup in the "trees and timber" category, joining pine saw timber and hardwood saw timber. The severance tax rates set by statute remained intact: on "trees and timber" 2¼% excepting "pulpwood" which was taxed at 5%. La.R.S. 47:633.

COMMISSIONS' AUTHORITY
The 1921 Louisiana Constitution, by article X, section 2, created the Louisiana Tax Commission. Subsequently, the 1974 Louisiana Constitution, by article XIV, section 16(A), continued the provision as a statute, which is now embodied in La.R.S. 47:1831. The legislature conferred specific duties on the Commission with respect to property taxes, and authorized it to have "duties, powers, or responsibilities otherwise conferred" upon it. La.R.S. 47:1835. In La.R.S. 47:633 et seq., the Louisiana Tax Commission was assigned a duty concerning the severance tax whereby it was to operate in conjunction with the Louisiana Forestry Commission in determining the current average stumpage market values of timber and pulpwood.
The Louisiana Forestry Commission was established in La.R.S. 3:4271 pursuant to La. Const. art. IX, § 8.[3] Specific duties and grants of power are contained within La.R.S. 3:4274, including the mandate that the Commission shall "[p]repare or cause to be prepared plans for execution of laws relating to forestry." La.R.S. 3:4274(1). La.R.S. 47:631 relates to forestry since it imposes a tax on "all natural resources severed from the soil," necessarily including all trees and timber.
The Louisiana Forestry Commission and the Louisiana Tax Commission have been charged with the execution of that severance tax by the requirement that they determine annually, on the second Monday of December, the current average stumpage market values of such timber to be included within the ambit of "trees and timber" and the values of such pulpwood to be included within the ambit of "pulpwood." La.R.S. 47:633(1) & (2). That charge necessitates a preliminary determination of what forest products comprise each general category. When the legislature has declared its will and fixed a "primary standard," agencies such as the Commissions in the case sub judice have the power to "fill up the details." State v. Union Tank Car Co., 439 So.2d 377 (La.1983). Thus, the authorization of a plan encompassed the Commissions' decision to include the chip and saw forest product within *1304 either the "pulpwood" or the "trees and timber" category.
The decision to include chip and saw in the "trees and timber" tax category beginning in the 1994 tax year was based on a necessity of placing the severed resource within the framework of La.R.S. 47:633. At the December 13, 1993 meeting, the Commissions made a factual finding, based on technology, market data, and the actual products resulting from processing chip and saw trees, that chip and saw was a timber product and not a pulpwood product. They further determined that maintaining chip and saw within any of the four subgroups in the current scheme would significantly and impermissibly skew the average stumpage value in contravention of La.R.S. 47:633.[4] Therefore, the Commissions separated chip and saw from the other subcategories and placed it within the "trees and timber" tax category.
Our first task is to determine whether the Commissions' conclusions of fact were reasonable. A reviewing court will not disturb an agency's reasonable, nonarbitrary findings of fact. White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971).
In January, 1993, almost one year before its decision, the Commissions formed a committee to study the chip and saw issue. The Commissions considered the committee's recommendation to place chip and saw within the "trees and timber" tax category, noting the prevalent use of chip and saw technology and the fact that fifty-four to sixty percent of the chip and saw trees were processed into lumber.[5] At the meeting, the Commissions also considered letters from four corporations urging the Commissions to adhere to the constitutional and statutory mandate to classify timber products in the "trees and timber" category rather than to arbitrarily tax chip and saw as "pulpwood." The letters cited Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940), which acknowledged that traditionally, timber was interpreted to represent trees that were "suitable for the manufacture of lumber." Id. at 259.[6] Commissioner Frey testified that when chip and saw first entered the marketplace, the Louisiana Forestry Commission had "arbitrarily placed" it in the pulpwood category, reflecting its primary use as a pulpwood product.
The Commissions also reviewed the November preliminary values where the market value of chip and saw was included in the market value of pine pulpwood, and compared them to those published in the Quarterly Report of Forest Products [hereinafter Quarterly Report]. The Commissions recognized that the average market value for pine pulpwood changed significantly once the value of chip and saw was removed.[7] When *1305 the market value for chip and saw was included in pine pulpwood's market value, the effective tax rate based on assessing 5% of the current average stumpage market value for that product was $10.01 per ton. Removing chip and saw from that subgroup resulted in an effective rate of $8.96 per ton for pine pulpwood.
The Commissions recognized that use of the Quarterly Report was mandatory under La.R.S. 47:633(3) and that inclusion of the chip and saw lumber product as part of pine pulpwood had "artificially inflated" the value of pulpwood by escalating that lower valued product. Ed Myers from Stone Container Corporation reported at the December 13, 1993 meeting that his severance taxes had increased from $525,036 in 1992 to $630,955 in 1993, while his milling costs had remained the same. The only explanation was the taxation of chip and saw as a pulpwood product when in fact, its market value and use denoted lumber. Thus, the inclusion of chip and saw as a pulpwood product had artificially augmented his taxes by over 20%. That report was consistent with economist Sun Chang's calculations on the effect of including chip and saw as part of pine pulpwood. Chang explained that the reason for the high revenue generation was that the higher priced chip and saw comprised fully 18.28 % of the composition of pine pulpwood. Therefore, chip and saw's influence on the average market value of the pine pulpwood subgroup, when it was included therein, was profound.
We do not find that the Commissions unreasonably concluded that chip and saw was a lumber product and that maintaining chip and saw in the pine pulpwood subgroup skewed the market values. Therefore, there is no reason to disturb the Commissions' findings of fact based on the record. White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971).
We must next address whether the Commissions' action in response to their conclusions of fact was legal. No deference is owed to a commission's conclusions of law. Marine Marketing Services, Inc. v. Dept. of Ins., 95-1879 (La.App. 1 Cir. 5/10/96), 673 So.2d 335, writ denied, 96-1479 (La.9/27/96), 679 So.2d 1354.
La.R.S. 47:633(1-3) challenges the Commissions to impose a tax on severed resources according to average stumpage market values. While classification of the severed resource according to its being "trees and timber" or "pulpwood" is presumed, the statute gives no direct guidance on how to classify the myriad varieties of available forest products.
La.R.S. 47:633.6(A)(1) required that market values be determined by "prices paid for all classifications of timber" (emphasis added). The legislature thereby recognized that the severed resources comprised a variety of products and must have anticipated the necessity for the Commissions to make a choice regarding the category into which the severed product belonged. We note that after the 1975 amendment to La.R.S. 47:633, the "trees and timber" category contained at least four different subgroups based on differences in value. Those subgroups were abandoned and reconfigured without objection.[8] Therefore, the categories are not limited by the subgroups in existence just prior to the Commissions' action. Moreover, the Quarterly Report, upon which severance tax values are based, included a separate market value for chip and saw. Therefore, a "chip and saw" subgroup was appropriate.
The plaintiffs argue that chip and saw should remain in the "pulpwood" category because of how the resource was measured, citing to La.R.S. 3:4641 and La.R.S. 3:4642. La.R.S. 3:4641(A) provides: "The standard rule or scale for the measurement of saw logs in this state is the Doyle Log Rule." The remainder of the section describes the procedure for using the Doyle Log Rule. La.R.S. *1306 3:4142(A) provides that "[n]o person shall compute the measurement of saw logs for severance tax purposes ... by any other rule or scale than the Doyle Log Rule."
We note that a variety of scales have been employed in the logging industry. Willamette Industries, supra. Thus, it is necessary for those who measure forest products to use the same standard of measurement in order not to manipulate the severance tax in their favor. In 1991, the legislature directed board feet and cord measurements to be converted to tons for severance tax purposes. La.R.S. 47:633.3. By 1993, approximately eighty percent of the industry weighed forest products directly, never using or converting to either cord measurements or the Doyle Log Rule. See Willamette Industries, supra. Considering the industry practice and legislative mandate, we take La.R.S. 3:4641 and La.R.S. 3:4642 to mean that when forest products are measured rather than weighed, the statutory standard of measurement must be utilized. Any other interpretation would lead to absurd results. Statutory interpretations that lead to absurd results are impermissible. Webb v. Parish Council of Parish of East Baton Rouge, 217 La. 926, 47 So.2d 718 (1950), reh'g denied (La.8/15/1950).
The plaintiffs urged, and the lower courts concluded, that including chip and saw within the pulpwood category was a custom having the effect of law. Whether taxing chip and saw as pulpwood rose to the level of custom is arguable. There was no evidence presented by the plaintiffs to indicate that such a custom was adopted by the agency as its rule. Moreover, the chairman of the Louisiana Forestry Commission stated that pulpwood, by common definition and practice, is a wood used in manufacturing paper. Factually, until recently, chip and saw was pulpwood. By 1993, however, chip and saw had factually become timber because of improvements in chip and saw technology. Until recently, the market reflected that chip and saw was being used primarily as pulpwood. That is, it was not being used primarily as building material. To stretch this practically to the level of custom or to enforce a past practice that is no longer based on reality would do an injustice to the statutory mandate that the severance tax was to be based on the "value of the products" and that pulpwood was to be taxed at a rate different from all other trees and timber. La.R.S. 47:633(1) & (2). Thus, even if taxing chip and saw in the "pulpwood" category were to have elevated to a level of custom, a conclusion of which we do not agree, then such custom must give way to a contradictory statutory mandate such as that found in La.R.S. 47:633. La.Civ. Code art. 3.
The policy in adopting the severance tax was envisioned in La. Const.(1921), art. X, § 1,[9] which provided in pertinent part: "For the purpose of encouraging the reforestation of denuded lands, ... a total severance tax based on the value of forest products when severed, three-fourths of which shall go to the parish were they are severed, ... shall be in lieu of all other taxes on said forest products." That policy prevented parishes from establishing a variety of local assessments on land. The article resulted in uniform tax rates that permitted industry to make sound business judgments to reforest throughout the state, knowing that no local assessment would jeopardize its investment.
The Commissions adhered to the principles expressed in the constitution and statutes. The Commissions changed no tax rate in contravention of La.R.S. 47:633. We conclude that their decision to place chip and saw as a subcategory in the trees and timber tax category was legally sound and need not be disturbed.

WAS THE RECLASSIFICATION A "NEW TAX?"
The power to levy a new tax is vested in the legislature. La. Const. art. 7, § 2. Thus, an action taken by an agency that results in the levy of a new tax would be void and unenforceable. Our task is to determine whether, by removing chip and saw from the "pulpwood" category and designating that *1307 forest product as a subcategory of "trees and timber" for severance tax purposes, the Commissions levied a new tax, as urged by the plaintiffs.
As this is a case of first impression, guidance must be gleaned from relevant law. This Court recently addressed the question of whether reclassification of a corporate dividend income amounted to an impermissible levy of a new tax in Dow Hydrocarbons & Resources v. Kennedy, 96-2471 (La.5/20/97), 694 So.2d 215. The Dow court held that changing the classification of the corporate dividends from "allocable income" to "apportionate income" was constitutionally impermissible as a revenue-raising measure. The court declined to say whether the measure constituted a new tax or an increase in an existing tax, finding that the constitution prohibited the levy of either in an odd numbered year. The Dow court noted, however, that by reclassifying, certain types of corporate dividend income earned outside the state that had not been subject to the tax were now taxed. In U.S. v. Darusmont, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981), the Court held that amendments to the minimum wage provision did not constitute a new tax because the items had been subject to taxation under the overall scheme before the change.
In Audubon Ins. Co. v. Bernard, 434 So.2d 1072 (La.1983), a statute proposing a .2% increase in an agency's collection was deemed a new tax because its primary purpose was to raise revenues.
In Cox Cable New Orleans, Inc. v. City of New Orleans, 92-2311 (La.9/3/93), 624 So.2d 890. reh'g denied, 10/7/93, this Court held the City's ordinance to be an impermissible levy of a new tax because the ordinance definition was not a fair reflection of the tax scheme as a whole. In Cox, the City enacted an ordinance along the lines of the enabling statute La.R.S. 4:41, but defined "production" to include "audiovisual production" so that the City could collect an amusement tax on that service. This Court noted that the critical inquiry was whether the definition fell "within the contemplation of the term ... used in the original ordinance and the enabling state statute." Id. at 894. Because the import of the statute was to charge amusement tax on live entertainment, the ordinance constituted the levy of a new tax. In Furlong v. Commissioner Internal Revenue, 93-3668 (7 Cir. 9/19/94), 36 F.3d 25, tax on a loan was not a wholly new tax in the overall tax scheme because the tax was reasonably foreseeable.
Viewed in light of the surrounding circumstances, we conclude that the Commissions' action in reclassifying chip and saw did not result in the imposition of a new tax. Chip and saw had always been a taxable item under La.R.S. 47:633. The purpose of the reclassification was not for raising revenue, but to conform the product to the mandate of section 633 to tax all trees and timber at the 2¼% severance tax rate, excepting only pulpwood. Both the market value and the factual composition of chip and saw indicated that those resources classified as chip and saw were no longer pulpwood. As a non-pulpwood product, the statute would not require chip and saw's exclusion from the universal 2¼% trees and timber tax category. La.R.S. 47:633 (1) & (2). Thus, placement of chip and saw in the trees and timber tax category was a fair reflection of the statutory scheme as a whole. Finally, given the recent developments in chip and saw technology, it was reasonably foreseeable that the product would be taxed at the trees and timber tax rate.

DECREE
For the foregoing reasons, the reclassification of chip and saw did not constitute an ultra vires act on the part of the Commissions, nor did that action result in the levy of a new tax. Accordingly, the judgment of the court of appeal is reversed.
REVERSED.
MARCUS, J., not on panel. Rule IV, Part 2, Sec. 3.
NOTES
[1] Rates set forth in the 1950 version of R.S. 47:633 included: "(1) On cypress timber, one dollar ($1.00) per thousand feet, log scale. (2) On pine timber, fifty ... cents per thousand feet, log scale. (3) On ash and hickory timber, seventy-five... cents per thousand feet, log scale. (4) On red gum timber, one dollar and fifty ($1.50) cents per thousand feet, log scale.... (5) On tupelo gum, black gum and sap gum timber, twenty-five ... cents per thousand feet, log scale. (6) On pulp wood, fifteen ... cents per standard cord...."
[2] Third quarter reports from 1992 reflected a stump average per ton of $27.11 for pine saw timber, $18.84 for chip and saw, $11.33 for hardwood saw timber, $8.63 for pine pulpwood, and $2.38 for hardwood pulpwood. La. Dept. Of Agriculture and Forestry, Quarterly Report of Forest Products, (JulySept. 1992).
[3] R.S. 3:4272 includes seven members on the Forestry Commission: The two ex-officio members are the head of the department of forestry at L.S.U. and the secretary of the Department of Wildlife and Fisheries. The remaining five appointed members are as follows: "Two of the members shall be owners or executive managers of interests owning and operating timberlands; one shall be the owner of farm lands interested in reforestration; one shall be a pulp and paper mill owner or executive manager; and the fifth shall be the owner or executive manager of interests manufacturing or treating poles, piling, posts, crossties, or veneer." Id.
[4] La. Forestry Commissioner Frey concluded that "there is anywhere from 54-60 percent lumber yield from chip-and-saw material." Adjudicatory Hearing of Commissions at 26, In Re: Chip-and Saw (Sept. 6, 1994). Therefore, chip and saw forest products fit within none of the four subcategories on the 1993 T-1 tax form. The 1993 T-1 form included pine saw timber and hardwood saw timber in the "trees and timber" tax category, and included pine pulpwood and hardwood pulpwood in the "pulpwood" tax category. The 1994 T-1 form included the new chip and saw subgroup under "trees and timber."
[5] It should be noted that no tree can be utilized 100% for lumber. The trunk is the main source, and even from that portion bark and nonsquared edges must be removed. Forestry and Wood Production, 19 The New Encyclopaedia Britannica, 423-24 (15th ed. 1991).
[6] In 1976, the comment to newly enacted La.Civ. Code art. 562, which binds usufructs to manage timberlands prudently, included as timber "any trees that could be cut for economic gain," including pulpwood. Id. at cmt. c. That definition is consistent with La.R.S. 47:633(1), which provides for a 2¼% tax on all "trees and timber, except pulpwood." The statutory language indicates that all merchantable timber is considered "trees and timber." "Pulpwood" was excepted merely to charge a higher severance tax for that lower valued product. "Pulpwood" was known to have a lower value in the marketplace. (Lampton Realty Co. v. Kerr, 154 La.843, 98 So.266 (1923)).
[7] Including chip and saw in the pine pulpwood subcategory resulted in these market values: pine saw timber, $31.10 per ton; hardwood saw timber, $13.23 per ton; pine pulpwood, $10.01 per ton; and hardwood pulpwood, $3.59 per ton. Notice of Intent, 19 La. Reg. 1143, 1144 (1993). Removing chip and saw from the pine pulpwood subgroup resulted in pine pulpwood's value becoming $8.96 per ton and chip and saw's value being recognized as $19.98 per ton. The other values remained the same. Minutes of the La. Forestry Commission and the La.Tax Commission (Dec. 13, 1993).
[8] The 1950 subgroups were cypress timber, pine timber, ash and hickory timber, red gum timber, tupelo and other gums, and pulpwood. By 1977, the distinction in prices among several of those subgroups had vanished. Therefore, those subgroups were abandoned and replaced with the four subgroups discussed herein. Letter from Edmond Burns, of the Louisiana Forestry Commission, to Ken Canik, La. Dept. Of Revenue and Taxation (Oct. 31, 1977).
[9] La. Const.(1921), art. X, § was implemented by Acts 1975, No. 170, § 1 as La.R.S. 47:1958.1, which was repealed by Acts 1978, No. 613, § 1.