STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

19-315

CALCASIEU PARISH SCHOOL BOARD SALES

& USE DEPARTMENT, ET AL.

VERSUS

NELSON INDUSTRIAL STEAM COMPANY

\*\*\*\*\*\*\*\*\*\*\*

ON REMAND FROM THE LOUISIANA STATE SUPREME COURT
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2017-1373
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*
SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy H. Ezell and John E. Conery, Judges.

CONERY, J., concurs and assigns reasons.

REVERSED.

Linda S. Akchin
Angela W. Adolph
Jason R. Brown
Kean Miller LLP
400 Covington Street, Suite 700
Baton Rouge, LA  70802
(225) 387-0999
Attorneys for Appellant:
Nelson Industrial Steam Co.

H. Alan McCall
Stockwell, Sievert, Vicellio, Clements & Shaddock
P.O. Box 2900
Lake Charles, LA  70602-2900
(337) 436-9491
Attorneys for Appellant:
Nelson Industrial Steam, Co.

**Russell J. Stutes, Jr.**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, La 70601**
**(337) 433-0022**
**Attorneys for Appellees:**
**Calcasieu Parish School Board Sales and Use Tax   Department**

**COOKS, Judge.**

## PROCEDURAL HISTORY

The Louisiana State Supreme Court reversed this court's prior decision in this case noting in its non-unanimous "Per Curiam" opinion that "[a]sh is an incidental byproduct under the statutory definition [now] set forth by Louisiana Revised Statutes 47:301(c)(i)(aa)(III)(aaa), as recently amended by the legislature." *Calcasieu Parish School Board Sales & Use Department v. Nelson Industrial Steam, Co.*, 20-724, p. 1 (La. 10/20/20), 303 So.3d 292 (*NISCO II*). In its previous decision addressing whether this same product produced by NISCO's operation was excluded from taxation the supreme court held, under the statute as it read at that time, that the ash produced by burning limestone with petcoke (to create steam to produce electricity) is *an intentionally planned end product* for which only the ultimate consumer was to be taxed. The supreme court did not say it was overruling its decision in *NISCO I*.

> The "further processing exclusion" simply seeks to ensure that double taxation is avoided by only taxing the ultimate consumer. To determine the rightful taxpayer of the raw material's sales tax, only the manufacturing process (and the physical and chemical components of the materials involved therein) is germane to the "purpose" test. Thus, the only question to ask is whether the limestone was purchased with the purpose (although not necessarily the *primary* purpose) of inclusion in the final product of ash. We find the record undeniably supports an affirmative answer to this inquiry.

*Bridges v. Nelson Indus. Steam Co.,* 15-1439, p. 12 (La. 5/3/16), 190 So.3d 276, 284, (*NISCO I*).

In the present case, however, the supreme court found that under the provisions of newly enacted Act 3, La. R.S. 47:30(c)(i)(aa)(III)(aaa), the ash produced by NISCO's operation "is an incidental byproduct" which is "secondary to the electricity," with a sales price "less than the cost of the limestone" used to make the ash. *NISCO II*, 303 So.3d 292-93. "As such, the purchase of limestone,

which is a material further processed into ash, 'shall not be deemed to be sales for further processing and shall be taxable.'" *Id*. At 293.

In its Per Curiam opinion in *NISCO II*, the supreme court further said that this court:

> too narrowly construed the meaning of "incidental," limiting the amendment's application only to those products that were unintentional or unplanned. However, within the broader context of the statute, it is clear the legislature included within the scope of the term "byproduct" *any* product that is secondary to a primary product when it is sold for a price less than the cost of its materials.

*Id*. At 292-93.

Nelson Industrial Steam Company (NISCO) produces electricity by burning petcoke to create steam that turns turbines to generate electricity for its own use and for resale. The steam generated is also a product for resale. In order to meet Environmental Protection Agency regulations when burning petcoke, NISCO must mix limestone with the petcoke and thereby limit production of sulfur into the atmosphere. The ash produced by this chemical reaction is also an end product for resale. NISCO's plant was designed with all three products in mind as revenue producing products in its overall operation. These facts are not in dispute and are the same facts presented as evidence in both *NISCO I* and *NISCO II* by the same witnesses.

On April 4, 2017, the Calcasieu Parish School Board Sales and Use Tax Department (CPSB) and Kimberly Tyree, in her capacity as administrator of the Department, filed suit against NISCO alleging "NISCO failed to pay and accrue use tax on its purchases of limestone." The Department based its suit on an audit of NISCO "for sales and use tax liability for the periods of January 1, 2013 through December 31, 2015." The Department alleged that NISCO's "taxable limestone purchases for the Audit Period total[ed] $17,785,725.58." It further alleged in the

suit that NISCO's limestone purchases during the audit period were made subject to taxation by Act 3 of the 2016 Second Extraordinary Session of the Louisiana Legislature, which became effective on June 23, 2016:

> If the materials are further processed into a byproduct for sale, such purchases of materials shall not be deemed to be sales for further processing and shall be taxable. For purposes of this Subitem, the term "byproduct" shall mean any *incidental product* that is sold for a sales price less than the cost of the materials.

La.R.S. 47:301(10)(c)(i)(aa)(III)(aaa) (emphasis added).

The Department also alleged in its lawsuit, and again maintains here, that "Section 2 of Act 3 provides that it is intended to clarify the original intent and application of R.S. 47:301(10)(c)(i)(aa)[1] and is, therefore, retroactive and applicable to the Audit Period." We conclude the statute was enacted in violation of Louisiana Constitution, Article VII, Section 2, which provides:

> The levy of a new tax, an increase in an existing tax, or a repeal of an existing tax exemption shall require the enactment of a law by two-thirds of the elected members of each house of the legislature.

The supreme court in its Per Curiam opinion in *NISCO II*, held that which was excluded from taxation before Act 3 amended La.R.S. 47:301(10)(c)(i)(aa) are now subject to taxation. Thus, Act 3 imposes a new tax. There is no dispute here that Act 3 was not passed by the required two-thirds vote of the legislature.

NISCO asserts "Act 3 violates multiple fundamental principles of constitutional law, including the Tax Limitation Clause of the Louisiana Constitution, the Separation of Powers Doctrine embodied in the Louisiana Constitution, and the Due Process and Equal Protection Clauses of the Louisiana and United States Constitutions." NISCO filed exceptions of lis pendens, prescription, no cause of action, and a motion for summary judgment as a matter of law based on the allegation that the enactment of Act 3 was "in violation of the Tax Limitation

Clause of the Louisiana Constitution." CPSB filed a motion for summary judgment.

NISCO filed a cross motion for summary judgment re-urging its exceptions and its

motion for summary judgment. NISCO also asserted that "Act 3 has no application

to use tax" and in the alternative it asserted "Act 3's application to NISCO's use of

---

[1]

    (c)(i)(aa) The term "sale at retail" does not include sale of materials for further processing into articles of tangible personal property for sale at retail when all of the criteria in Subsubitem (I) of this Subitem are met.

    (I)(aaa) The raw materials become a recognizable and identifiable component of the end product.

    (bbb)    The raw materials are beneficial to the end product.

    (ccc)    The raw materials are material for further processing, and as such, are purchased for the purpose of inclusion into the end product.

    (II) For purposes of this Subitem, the term "sale at retail" shall not include the purchase of raw materials for the production of raw or processed agricultural, silvicultural, or aquacultural products.

    (III)(aaa) If the materials are further processed into a byproduct for sale, such purchases of materials shall not be deemed to be sales for further processing and shall be taxable. For purposes of this Subitem, the term "byproduct" shall mean any incidental product that is sold for a sales price less than the cost of the materials.

    (bbb) In the event a byproduct is sold at retail in this state for which a sales and use tax has been paid by the seller on the cost of the materials, which materials are used partially or fully in the manufacturing of the byproduct, a credit against the tax paid by the seller shall be allowed in an amount equal to the sales tax collected and remitted by the seller on the taxable retail sale of the byproduct.

La.R.S. 47:301(10), in pertinent part.

4

limestone violates the Equal Protection Clauses of the Louisiana and United States Constitutions; and NISCO's purchases of limestone for further processing into its ash product are not taxable under Act 3, because NISCO's ash product is not an 'incidental' product, and therefore does not meet the definition of 'byproduct' under Act 3."

The trial court found NISCO's production of ash is "incidental" to its manufacturing of electricity thus, the ash "fits the definition of byproduct in Act 3 and it doesn't qualify NISCO for the tax exemption." The trial court also found that Act 3 "is not a levy of a new tax [and] it's not a repeal of a tax exemption [, but] it's a close call [as to] whether or not it's an increase of an existing tax." (We note that the previous statute provided an *exclusion* from tax not an *exemption*.) Ultimately, the trial court also ruled that Act 3 is not an increase of an existing tax. The trial court further found Act 3 constitutional because NISCO did not overcome the presumption of constitutionality as regards its equal protection argument. It denied all NISCO's exceptions, denied its motion for summary judgment and its cross motion for summary judgment, and granted CPSB's motion for summary judgment. NISCO appealed asserting seven assignments of error:

1. The District Court erred in denying NISCO's Motion for Summary Judgment and Cross Motion for Summary Judgment because Act 3 meets the Louisiana Supreme Court's three-pronged test for legislation that levies a new tax or increases an existing tax, and was enacted without the supermajority vote of both houses of the Legislature required for such legislation under the Tax Limitation Clause of the Louisiana Constitution.

2. The District Court erred in denying NISCO's Peremptory Exception of No Cause of Action and Cross Motion for Summary Judgment because Act 3 is retroactive substantive law enacted under the guise of interpretive legislation, and targets and attempts to "legislatively overrule" prior Louisiana Supreme Court jurisprudence, thus impinging on the judicial authority in violation of the Separation of Powers Doctrine embodied in the Louisiana Constitution.

3. The District Court erred in denying NISCO's Peremptory Exception of No Cause of Action and Cross Motion for Summary Judgment

5

because Art 3 is a retroactive new tax; or alternatively, its retroactive application is not supported by a legitimate purpose furthered by rational means, is not for a modest period of time, and divests NISCO of vested rights.

4. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because Act 3 created disparate treatment of purchasers of materials further processed into byproducts for sales tax purposes and use tax purposes, and that disparate treatment has no rational basis, in violation of the Equal Protection Clauses of the Louisiana and United States Constitutions.

5. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because Act 3 does not amend the further processing exclusion in the definition of "use" for use tax purposes, and thus does not apply to CPSB's suit to collect use tax.

6. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because NISCO purchases limestone for further processing into an ash product that is not an "incidental" product, and thus not a "byproduct" for which raw material purchases are subject to tax under Act 3.

7. The District Court erred in denying NISCO's Peremptory Exception of Prescription and Cross Motion for Summary Judgment because the suit seeks to collect taxes becoming due before December 31, 2013 and was not filed until April 4, 2017, more than three years from December 31st of the year in which those taxes became due, and because a prior action filed before December 31, 2016 was (i) filed in an action in which the district court had been divested of jurisdiction, and (ii) dismissed without prejudice.

**LEGAL ANALYSIS**

We previously addressed only the issue of whether the limestone NISCO purchased for use in the production of electricity was excluded from taxation because the ash produced by it and resold was not an "incidental" product and thus not a "byproduct" whose raw material (limestone) purchases would be taxed under Act 3. The supreme court held that our application of the new statutory provisions was flawed and found that the term "byproduct," as now defined in Act 3, means "*any* product that is secondary to a primary product when it is sold for a price less than the cost of the materials." *NISCO II*, 203 So.3d at 293 (emphasis in original). The supreme court remanded the case to this court for consideration of issues

6

pretermitted by our previous ruling with instruction to address those issues, specifically "including an analysis of whether the amendment is a new tax or an increase in a tax." *Id.* Based upon the supreme court's instruction in *NISCO II*, we now find it necessary to address only the issues of whether this is a new tax and whether the new tax created by Act 3's removal of a prior *exclusion* from taxation was enacted in accordance with the Louisiana Constitution. We find it is a new tax and the enactment was not in accordance with the Louisiana Constitution. There is no dispute here on summary judgment that Act 3 was passed without the requisite two-thirds vote of the legislature. Applying the supreme court's rationale articulated in its Per Curiam opinion in *NISCO II*, we find Act 3 sought to tax that which was previously *excluded* from taxation. It is, therefore, a new tax. We further find it is not necessary to address any other issues presented.

> Appellate courts review summary judgments de novo, using the same analysis as the trial court in deciding whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

*Terrell v. Town of Lecompte*, 18-1004, p. 4 (La.App. 3 Cir. 6/5/19), 274 So.3d 605, 608.

> The interpretation of a statute is a question of law that may be decided by summary judgment. When addressing legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law de novo, after which it renders judgment on the record. ***Bannister Properties, Inc. v. State***, 2018-0030 (La. App. 1st Cir. 11/2/18), 265 So.3d 778, 788, <u>writ denied</u>, 2019-0025 (La. 3/6/19), 266 So.3d 902.

> The fundamental issues in all cases of statutory interpretation are legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Legislation is the solemn expression of legislative will and, therefore, interpretation of a law involves primarily a search for the legislature's intent. ***Montgomery v. St. Tammany Par. Gov't,*** 2017-1811 (La. 6/29/18), —— So.3d ——, ——. But when a law is clear and

7

unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. *Id.* See La. C.C. art. 9. This principle applies to tax statutes. ***Tarver v. E.I. Du Pont De Nemours & Co.,*** 634 So.2d 356, 358 (La. 1994). It is only when the language of the law is susceptible of different meanings that it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. See La. C.C. arts. 10 and 11; ***Bannister Properties, Inc.,*** 265 So.3d at 790.

Legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, well-established principles of statutory construction, and with knowledge of the effect of their acts and purpose in view. ***M.J. Farms, Ltd. v. Exxon Mobil Corp.,*** 2007-2371 (La. 7/1/08), 998 So.2d 16, 27. A statute that imposes a tax should be liberally construed in favor of the taxpayer. ***Bannister Properties, Inc.,*** 265 So.3d at 791. And if the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. ***Entergy Louisiana. Inc. v. Kennedy,*** 2003-0166 (La. App. 1st Cir. 7/2/03), 859 So.2d 74, 78, writ denied, 2003-2201 (La. 11/14/03), 858 So.2d 430.

*Jazz Casino Co., L.L.C. v. Bridges*, 19-1530, pgs. 8-9, (La. App. 1 Cir. 7/29/20), ___So.3d___, *reversed in part on other grounds*, 20-1145 (La. 2/9/21), ___So.3d___.

The trial court erred as a matter of law in concluding that the tax provision at issue was a tax exemption rather than, as we and the state supreme court have found, it was a tax exclusion.

The factual backdrop of this case as set forth above is not in dispute. In support of its cross motion for summary judgment NISCO provided affidavits of Shelley G. Hacker (Hacker) and Gary Livengood (Livengood). Hacker and Livengood both testified in *NISCO I*. In addition to the information contained in their affidavits in support of NISCO's motions and exceptions both attached their trial testimony in the previous case. The affidavits of Hacker and Livengood are uncontradicted. In *NISCO I* the supreme court, applying the statutory language in effect at that time, found that NISCO's production of ash *is not an incidental*

8

*byproduct* but is in fact an *end product* "produced and sold to LA Ash, making it an 'article of tangible personal property for sale at retail.'" *NISCO I*, 190 So.3d at 282.

In *NISCO I* the state supreme court found that La.R.S. 47:301(1)(a)(i)(c)(1)(aa) ***statutorily excluded*** "sales of materials for further processing into articles of tangible personal property" from the term "sale at retail." *NISCO I*, 190 So.3d at 279. The supreme court explained that this statutory provision was a tax *exclusion*, differentiating it from a tax *exemption*. We agree with that reasoning. While a *tax exemption* makes a transaction that would otherwise be taxable exempt from such taxation, **a *tax exclusion* renders a transaction not taxable *ab initio*.** "Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax." *NISCO I*, 190 So.3d at 280 "(quoting Bruce J. Oreck, *Louisiana Sales and Use Taxation* (2d ed. 1996) §3.1.")".

> Although the "further processing exclusion" is deemed neither an exclusion nor an exemption in the statute itself, as we stated in *Harrah's Bossier City* [*Inv. Co., LLC v. Bridges,* 09–1916, pp. 9–10 (La.5/11/10)], 41 So.3d [438],at 450:
>
>> There are no "magic words" necessary to create an exemption or an exclusion; *the determining factor is the effect of the statute:* "the words and form used legislatively in granting an exemption are not important if, in their essence, the Legislature creates an exemption." *Wooden v. Louisiana Tax Commission,* 94–2481 (La.2/20/95), 650 So.2d 1157, 1161, citing *Meyers v. Flournoy,* 209 La. 812, 25 So.2d 601 (1946). [Emphasis added].
>
> This court has determined the "further processing exclusion" was designed "to eliminate the tax on the sale of a material purchased for further processing into finished products and to place the tax on the ultimate consumer of the finished product processed from the raw material." This court's findings regarding the purpose of the provision, together with this provision's placement in the definition section, rather than in La. R.S. 47:305 with many clear "exemptions," indicate that the legislature meant this provision to be a limitation *ab initio* on the definition of "sale at retail." Thus, it seems the "further processing provision" is an exclusion. Indeed, this conclusion follows logically from the underlying principle that "sales at retail" are subject to sales tax but sales "for resale" including, by extension, sales of materials for

further processing *before* resale, are categorically not considered "sales at retail," because the buyer is not the ultimate consumer. Thus, we find the provision at issue is an exclusion and will be liberally construed in favor of the taxpayer, NISCO.

*NISCO I*, 190 So.3d at 280–81(third alteration in original) (footnote omitted).

The new statutory definition of "sale at retail" enacted by Act 3 provides:

(c)(i)(aa) The term "sale at retail" does not include sale of materials for further processing into articles of tangible personal property for sale at retail when all of the criteria in Subsubitem (I) of this Subitem are met.

(I)(aaa) The raw materials become a recognizable and identifiable component of the end product.

(bbb)     The raw materials are beneficial to the end product.

(ccc)     The raw materials are material for further processing, and as such, are purchased for the purpose of inclusion into the end product.

La.R.S. 47:301(10), in pertinent part.

In *NISCO I*, the supreme court determined the production of ash by NISCO was an *intentional, planned, end product of their manufacturing process.* NISCO's witnesses in the present case testified in their affidavits in support of summary judgment that nothing has changed since *NISCO I* was decided regarding the manufacture of electricity, steam, and ash at its facility, and their testimony would be the same in this case.

The purpose to produce and sell ash is evidenced in the "Partnership Agreement's" language that NISCO would (1) conduct "any activities related" to the manufacture of electricity and steam, (2) construct substantial "New Facilities", which contemplated the handling and sorting of the ash, and (3) receive income from the ash sales. Undisputed testimony established that NISCO actively purchased equipment specifically designed for the production of ash and sought a buyer for its ash. For the last twenty-two years, NISCO has sold one hundred percent of its ash product. NISCO's current contract with its limestone supplier recognizes that the limestone will be used for the two-fold purpose of absorbing sulfur released by the petcoke *and* producing ash as a saleable product. As stated earlier, the ash brings in roughly $6.8 million in revenue. . . . The fact that the ash profit contributes to NISCO's bottom line and acts as a cost offset, rather than the company's principal income, does not change the fact that the ash

is still an article of tangible personal property that will be resold to another consumer, who will bear the ultimate burden of taxation. Accordingly, we find NISCO's purposeful decisions related to engineering, infrastructure, and marketing lead to the only possible conclusion that the limestone was purchased with the purpose— perhaps not the sole or primary purpose, *but the purpose nonetheless— of making a saleable end product of ash.* Since the limestone is a recognizable, identifiable, beneficial material bought for the purpose of inclusion in the ash product, we find it qualifies for the "further processing exclusion."

*NISCO I*, 190 So.3d at 284–85 (second emphasis added);(footnote omitted).

In *NISCO I*, the supreme court said this language did not render NISCO's purchase of limestone taxable because the ash product *manufactured* by burning limestone with sulfur was *not an incidental byproduct* within the meaning of the statutory provisions as they read in the statute at that time. But, under the statutory provisions enacted by Act 3, the high court explains that a proper application of Act 3's revisions to the statute now render NISCO's purchases of limestone taxable and no longer excluded from taxation. Clearly, under the prior statute, according to the supreme court, *the ash was not an incidental byproduct* and therefore the limestone used to make it was excluded from taxation. Now, under the supreme court's interpretation of the current statute, what was excluded from taxation is now subject to tax.

In our prior opinion in this case, we found the new provisions added by Act 3, did not impose a new tax or increase a tax but merely codified the prior jurisprudence, thereby making the *International Paper v. Bridges, 07-1151 (La. 1/16/08),* 972 So.2d 1121, three-pronged-test the statutory test for determining whether materials used in further processing that result in the production of a by-product are excluded from sales and use taxation. This concept of incidental byproduct versus intentional end-product had long been jurisprudentially recognized in Louisiana courts' prior determinations regarding "further processed goods" of material needed to make that byproduct. Under this court's previous interpretation

11

of Act 3, the tax burden would continue to be appropriately placed on the end-user, and as the state supreme court noted in *NISCO I*:

> [T]he existing … legislative intent encourages courts and the Louisiana Department of Revenue to adhere to the exclusive three-prong test set forth by the courts. Particularly, the legislature recognized that many other states do not tax *any* raw materials used in the manufacturing of products for resale. Deviation from this three-prong test, as warned by the legislature could "undermine the efforts of Louisiana to attract additional investment dollars in the state." Accordingly, we find the conclusion reached herein best comports with the legislative intent regarding taxation of materials further processed into articles of tangible personal property.

*NISCO I*, 190 So.3d at 286-87(footnote omitted).

But, under the supreme court's interpretation of the language of Act 3 here in *NISCO II,* the statute now defines NISCO's ash product as an "incidental byproduct" making "the purchase of limestone . . . a material further processed into ash," no longer excluded from taxation, but now subject to taxation because it is no longer "deemed to be sales for further processing." *NISCO II*, 303 So.3d at 293.

## DECREE

For the reason stated, we reverse the trial court's grant of summary judgment in favor of the Calcasieu Parish School Board Sales and Use Tax Department and we hereby grant Nelson Industrial Steam Company's Exception of No Cause of Action, raised in its Cross Motion for Summary Judgment, dismissing Plaintiff's claims with prejudice. Court costs in the amount of $12,242.09 on appeal and $14,946.14 in the trial court are assessed against the Calcasieu Parish School Board Sales and Use Tax Department.

**REVERSED.**

12

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

NUMBER 19-315

CALCASIEU PARISH SCHOOL BOARD
SALES & USE DEPARTMENT, ET AL.

VERSUS

NELSON INDUSTRIAL STEAM COMPANY

CONERY, J., concurs and assigns reasons.

With regard to the legislature's taxing authority, La.Const. art. 7, § 2 mandates that "[t]he levy of a new tax" or "an increase in an existing tax," be enacted "by two-thirds of the elected members of each house of the legislature." Act 3 was not, as the House of Representatives passed the measure by simple majority. It is clear that the amendment of La.R.S. 47:301(10)(c)(i)(aa)(III)(aaa) constitutes a "new tax."

In *Bridges v. Nelson Indus. Steam Co.*, 15-1439 (La. 5/3/16), 190 So.3d 276 (*NISCO I*), the supreme court reviewed "the jurisprudential test created over the last few decades" in discussing the "further processing exclusion" of La.R.S. 47:301(10)(c)(i)(aa) and before finding NISCO's purchase of limestone subject to that exclusion from taxation. The statute thus provided taxing authorities with no basis for the collection of tax revenue from that product.

Before *NISCO I* became final, the legislature indicated its intent to "clarify … the original intent and application of R.S. 47:301(10)(c)(i)(aa)." 2016 La. Acts No. 3, § 2. The amendment, however, was not applicable to the facts and audit periods involved in *NISCO I*, as the legislature made "the provisions of this Act … retroactive and applicable to all refund claims submitted or assessments of

additional taxes due which are filed *on or after the effective date of this act*." *Id.* (emphasis added). Continuing, the legislature indicated that Act 3 "shall not be applicable to any existing claim for refund filed or assessment of additional taxes due issued prior to the effective date of this Act for any tax period prior to July 1, 2016, which is not barred by prescription." *Id.*

While the parties dispute whether Act 3 can be treated as a mere clarification or interpretive measure, and thus given retroactive effect since *NISCO I* was not final at the time of its enactment, that dispute is of no consequence in the analysis of whether the measure levied a "new tax" or increased "an existing tax" for purposes of validity under La.Const. art. 7, § 2. In operation, it imposed a tax on materials previously determined to be excluded only after it's effective date. Further, Act 3, § 2 specifically indicates that it is inapplicable to the claim involved in *NISCO I*. That ruling, along with the determination regarding the excluded material, is now final.

With regard to the issue of whether Act 3 involved a new tax, the supreme court addressed a similar scenario in *Dow Hydrocarbons & Res. v. Kennedy*, 96-2471 (La. 5/20/97), 694 So.2d 215. In *Dow*, the supreme court addressed 1993 La. Acts No. 690, which reclassified certain corporate income from "allocable income" to "apportionable income" and considered whether the legislation enacted a "new tax" or "increased an existing tax." The query was critical given Dow's challenge to the 1993 legislation under La.Const. art. 3, § 2, which, at that time, prohibited the legislature from levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year.

The supreme court explained that, prior to the enactment of Act 690, "a corporation was not subject to tax on dividends received from a subsidiary

2

provided that the subsidiary earned all of its income outside of Louisiana," but that Act 690 "changed the classification of dividend income from allocable income to apportionable income." *Id.* at 217. "Consequently, the previously untaxed income received from such sources is now subject to Louisiana corporate tax." *Id.* Given that change, the supreme court found no difficulty in the initial determination of whether Act 690 constituted a tax as moneys collected by the State via the Louisiana Corporate Income Tax statutes are taxes, and moneys paid pursuant to the statutes modified by Act 690 are taxes. *Id.* 2016 La. Acts No. 3 operates in the same way, providing for the payment of taxes.

Continuing, the supreme court further explained in *Dow* that the secondary determination of "whether Act 690 is more appropriately characterized as a new tax versus an increase to an existing tax is somewhat difficult," but "that it is one of the two is easily discernable." *Id.* Notably, prior to Act 690, certain corporations did not pay the subject money to Louisiana, whereas after the reclassification, they did. The supreme court found, however, that although arguably a new tax, "it matters not whether Act 690 is characterized as a new tax or an increase to an existing tax as both are violative of [La.Const. art. 3, § 2]" which then prohibited any measure levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year. Enacted in 1993, an odd-numbered year, the supreme court therefore maintained the trial court's determination that Act 690 was unconstitutional under Article 3, § 2.

Although La.Const. art. 7, § 2 is at issue in this case, rather than Article 3, § 2 as in *Dow*, both Articles address the legislative framework for passage of matters involving a new tax or an increase to an existing tax. Like Act 690 in *Dow*, Act 3 resulted in the assessment of taxes not formerly paid. Whether that former lack of

3

taxation was due to judicial interpretation or legislative will is of no consequence as the legislature addressed the situation by ultimately assessing the contested tax via the amended language contained in Act 3. As the supreme court explained, "[w]here the collected moneys at issue are clearly taxes, there is no need to digress into an analysis of legislative intent." *Dow*, 694 So.2d at 217, n.6 (citing La.Civ.Code art. 9). Further consideration of the legislature's intent to clarify its earlier language is inconsequential given the taxation realm in which Act 3 was enacted.

CPSB advances *Palmer v. Louisiana Forestry Comm'n*, 97-0244 (La. 10/21/97), 701 So.2d 1300 for the proposition that Act 3 did not impose a new tax but that it fit within the overall scheme of taxing the ultimate consumer of a product rather than altering the overall scheme of a taxing authority. *Palmer* is distinguishable however, as it questioned the actions of the Louisiana Tax Commission's reclassification of "chip and saw" forestry product from a pulp wood subgroup to a "trees and timber" subgroup for purposes of assessment of severance taxes. The reclassification resulted in lesser tax collections for the plaintiff police juries.

Although the *Palmer* plaintiffs asserted that the reclassification constituted a "new tax" and therefore permitted the Commission to encroach on the legislature's power to levy a tax, the supreme court rejected that argument. The "chip and saw" product *had instead always been taxable* under the statute and, as the supreme court remarked, the reclassification from the higher taxed group to the lower taxed group was obviously not for the purpose of *raising* revenue. *Id.* In fact, the supreme court distinguished the matter in *Palmer* from *Dow* on that basis noting that the reclassification in *Dow* related to income that "had *not* been subject to the

4

tax" before the amendment. *Id.* at 1307 (emphasis in the original). In contrast to *Dow*, the reclassification in *Palmer*, the supreme court concluded, was merely a fair reflection of the statutory scheme. Additionally, developments in "chip and saw technology" indicated that it was reasonably foreseeable that the product would be taxed at the lesser "trees and timber" tax rate. *Id.* at 1307.

The same cannot be said in this case. Act 3 clearly raised revenue by bringing into the taxable ambit items previously excluded from taxation under La.R.S. 47:301. That new inclusion is reflected in the supreme court's interpretation of Act 3 in its per curiam, wherein the supreme court explained that "[a]sh is an incidental byproduct under the statutory definition set forth by Louisiana Revised Statutes 47:301(c)(i)(aa)(III)(aaa), *as recently amended by the legislature*." *Calcasieu Par. Sch. Bd. Sales & Use Dep't*, 20-724 (La. 10/20/20), 303 So.3d 292 (emphasis added).

The purpose of Act 3, the amendment addressed by the supreme court, was patently to raise revenue, with portions of the legislation identifying time periods to which its designated assessments were applicable. Those identified time periods were not applicable to *NISCO I* by the specific temporal parameters of the legislation itself and thus its finality at the time of the new legislative pronouncement is not determinative in this case.

The tax burden identified in Act 3 was thus a new one, assessing taxes on items previously excluded and requiring enactment by two-thirds of both legislative houses. The June 19, 2016 Roll Call of the House of Representatives reflects Final Passage in the House of Representatives with 54 "Yeas" and 47 "Nays." Four members were absent. That simple majority fell short of the

5

constitutional mandate, requiring that 2016 La. Acts No. 3, § 2 be found violative of Article 7, § 2.

With the additional reasons, I concur with the lead opinion to reverse the trial court's grant of summary judgment and find that CPSB's case must be dismissed upon granting of NISCO's cross motion for summary judgment.