STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

NUMBER 19-315

CALCASIEU PARISH SCHOOL BOARD
SALES & USE DEPARTMENT, ET AL.

VERSUS

NELSON INDUSTRIAL STEAM COMPANY

CONERY, J., concurs and assigns reasons.

With regard to the legislature's taxing authority, La.Const. art. 7, § 2 mandates that "[t]he levy of a new tax" or "an increase in an existing tax," be enacted "by two-thirds of the elected members of each house of the legislature." Act 3 was not, as the House of Representatives passed the measure by simple majority. It is clear that the amendment of La.R.S. 47:301(10)(c)(i)(aa)(III)(aaa) constitutes a "new tax."

In *Bridges v. Nelson Indus. Steam Co.*, 15-1439 (La. 5/3/16), 190 So.3d 276 (*NISCO I*), the supreme court reviewed "the jurisprudential test created over the last few decades" in discussing the "further processing exclusion" of La.R.S. 47:301(10)(c)(i)(aa) and before finding NISCO's purchase of limestone subject to that exclusion from taxation. The statute thus provided taxing authorities with no basis for the collection of tax revenue from that product.

Before *NISCO I* became final, the legislature indicated its intent to "clarify … the original intent and application of R.S. 47:301(10)(c)(i)(aa)." 2016 La. Acts No. 3, § 2. The amendment, however, was not applicable to the facts and audit periods involved in *NISCO I*, as the legislature made "the provisions of this Act … retroactive and applicable to all refund claims submitted or assessments of

additional taxes due which are filed *on or after the effective date of this act*." *Id.* (emphasis added). Continuing, the legislature indicated that Act 3 "shall not be applicable to any existing claim for refund filed or assessment of additional taxes due issued prior to the effective date of this Act for any tax period prior to July 1, 2016, which is not barred by prescription." *Id.*

While the parties dispute whether Act 3 can be treated as a mere clarification or interpretive measure, and thus given retroactive effect since *NISCO I* was not final at the time of its enactment, that dispute is of no consequence in the analysis of whether the measure levied a "new tax" or increased "an existing tax" for purposes of validity under La.Const. art. 7, § 2. In operation, it imposed a tax on materials previously determined to be excluded only after it's effective date. Further, Act 3, § 2 specifically indicates that it is inapplicable to the claim involved in *NISCO I*. That ruling, along with the determination regarding the excluded material, is now final.

With regard to the issue of whether Act 3 involved a new tax, the supreme court addressed a similar scenario in *Dow Hydrocarbons & Res. v. Kennedy*, 96-2471 (La. 5/20/97), 694 So.2d 215. In *Dow*, the supreme court addressed 1993 La. Acts No. 690, which reclassified certain corporate income from "allocable income" to "apportionable income" and considered whether the legislation enacted a "new tax" or "increased an existing tax." The query was critical given Dow's challenge to the 1993 legislation under La.Const. art. 3, § 2, which, at that time, prohibited the legislature from levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year.

The supreme court explained that, prior to the enactment of Act 690, "a corporation was not subject to tax on dividends received from a subsidiary

2

provided that the subsidiary earned all of its income outside of Louisiana," but that Act 690 "changed the classification of dividend income from allocable income to apportionable income." *Id.* at 217. "Consequently, the previously untaxed income received from such sources is now subject to Louisiana corporate tax." *Id.* Given that change, the supreme court found no difficulty in the initial determination of whether Act 690 constituted a tax as moneys collected by the State via the Louisiana Corporate Income Tax statutes are taxes, and moneys paid pursuant to the statutes modified by Act 690 are taxes. *Id.* 2016 La. Acts No. 3 operates in the same way, providing for the payment of taxes.

Continuing, the supreme court further explained in *Dow* that the secondary determination of "whether Act 690 is more appropriately characterized as a new tax versus an increase to an existing tax is somewhat difficult," but "that it is one of the two is easily discernable." *Id.* Notably, prior to Act 690, certain corporations did not pay the subject money to Louisiana, whereas after the reclassification, they did. The supreme court found, however, that although arguably a new tax, "it matters not whether Act 690 is characterized as a new tax or an increase to an existing tax as both are violative of [La.Const. art. 3, § 2]" which then prohibited any measure levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year. Enacted in 1993, an odd-numbered year, the supreme court therefore maintained the trial court's determination that Act 690 was unconstitutional under Article 3, § 2.

Although La.Const. art. 7, § 2 is at issue in this case, rather than Article 3, § 2 as in *Dow*, both Articles address the legislative framework for passage of matters involving a new tax or an increase to an existing tax. Like Act 690 in *Dow*, Act 3 resulted in the assessment of taxes not formerly paid. Whether that former lack of

taxation was due to judicial interpretation or legislative will is of no consequence as the legislature addressed the situation by ultimately assessing the contested tax via the amended language contained in Act 3. As the supreme court explained, "[w]here the collected moneys at issue are clearly taxes, there is no need to digress into an analysis of legislative intent." *Dow*, 694 So.2d at 217, n.6 (citing La.Civ.Code art. 9). Further consideration of the legislature's intent to clarify its earlier language is inconsequential given the taxation realm in which Act 3 was enacted.

CPSB advances *Palmer v. Louisiana Forestry Comm'n*, 97-0244 (La. 10/21/97), 701 So.2d 1300 for the proposition that Act 3 did not impose a new tax but that it fit within the overall scheme of taxing the ultimate consumer of a product rather than altering the overall scheme of a taxing authority. *Palmer* is distinguishable however, as it questioned the actions of the Louisiana Tax Commission's reclassification of "chip and saw" forestry product from a pulp wood subgroup to a "trees and timber" subgroup for purposes of assessment of severance taxes. The reclassification resulted in lesser tax collections for the plaintiff police juries.

Although the *Palmer* plaintiffs asserted that the reclassification constituted a "new tax" and therefore permitted the Commission to encroach on the legislature's power to levy a tax, the supreme court rejected that argument. The "chip and saw" product *had instead always been taxable* under the statute and, as the supreme court remarked, the reclassification from the higher taxed group to the lower taxed group was obviously not for the purpose of *raising* revenue. *Id.* In fact, the supreme court distinguished the matter in *Palmer* from *Dow* on that basis noting that the reclassification in *Dow* related to income that "had *not* been subject to the

4

tax" before the amendment. *Id.* at 1307 (emphasis in the original). In contrast to *Dow*, the reclassification in *Palmer*, the supreme court concluded, was merely a fair reflection of the statutory scheme. Additionally, developments in "chip and saw technology" indicated that it was reasonably foreseeable that the product would be taxed at the lesser "trees and timber" tax rate. *Id.* at 1307.

The same cannot be said in this case. Act 3 clearly raised revenue by bringing into the taxable ambit items previously excluded from taxation under La.R.S. 47:301. That new inclusion is reflected in the supreme court's interpretation of Act 3 in its per curiam, wherein the supreme court explained that "[a]sh is an incidental byproduct under the statutory definition set forth by Louisiana Revised Statutes 47:301(c)(i)(aa)(III)(aaa), *as recently amended by the legislature.*" *Calcasieu Par. Sch. Bd. Sales & Use Dep't*, 20-724 (La. 10/20/20), 303 So.3d 292 (emphasis added).

The purpose of Act 3, the amendment addressed by the supreme court, was patently to raise revenue, with portions of the legislation identifying time periods to which its designated assessments were applicable. Those identified time periods were not applicable to *NISCO I* by the specific temporal parameters of the legislation itself and thus its finality at the time of the new legislative pronouncement is not determinative in this case.

The tax burden identified in Act 3 was thus a new one, assessing taxes on items previously excluded and requiring enactment by two-thirds of both legislative houses. The June 19, 2016 Roll Call of the House of Representatives reflects Final Passage in the House of Representatives with 54 "Yeas" and 47 "Nays." Four members were absent. That simple majority fell short of the

5

constitutional mandate, requiring that 2016 La. Acts No. 3, § 2 be found violative of Article 7, § 2.

With the additional reasons, I concur with the lead opinion to reverse the trial court's grant of summary judgment and find that CPSB's case must be dismissed upon granting of NISCO's cross motion for summary judgment.